The Honorable Grady P. Arrington State Representative and Chairman Legislative Joint Auditing Committee State Capitol, Room 172 Little Rock, Arkansas 72201
Dear Representative Arrington:
This is in response to your request for an opinion on several questions concerning the receipt of compensation by a state officer or employee from more than one state agency. Specifically, you have outlined the nature of the compensation received by Dr. Joycelyn Elders, and have posed four general questions concerning the legality of such arrangements.
You have noted that on October 22, 1987, the Board of Health approved Dr. M. Joycelyn Elders to serve as Secretary of the Board of Health and Director of the Department of Health. She was appointed by the Governor as prescribed by A.C.A. § 25-2-107. You note that Dr. Elders also holds the position of a faculty professor at the University of Arkansas for Medical Sciences ("UAMS"). The total amount of compensation she receives for both positions is paid, technically, by UAMS. She receives an annual salary from UAMS as authorized by the UAMS salary appropriation act, and in addition, receives certain "special allowances" which are paid from auxiliary income of UAMS from receipts of professional income in the care of patients. These "special allowance" are authorized by § 9 of Act 278 of 1989 (1st Ex. Sess.). You note that during the years ended June 30, 1988 and 1989, Dr. Elders was paid $92,356.47 and $103,297.88 respectively, by UAMS.
You also note that the maximum authorized salary for the Director of the Department of Health was $69,395.00 for the years ended June 30, 1988 and 1989, and the maximum annual salary appropriated for the position of Health Director for the year ended June 30, 1990 is $72,907.00. Additionally you note that in July of 1989, UAMS negotiated a professional services contract for $87,624.00 with the Department of Health to allow Dr. Elders to "provide direction and leadership in activities carried out by the Arkansas Department of Health." This contract between UAMS and the Department of Health effectively requires Dr. Elders, a faculty professor at UAMS, and a state employee, to serve as Director of the Department of Health. Our Arkansas Department of Health Director serves in that position by virtue of a professional services contract, while simultaneously holding the position of faculty professor at UAMS, another state agency. The contract commences July 1, 1989 and terminates June 30, 1990. It calls for 260 actual working days, (52 weeks x 5 days a week = 260 days).
Based upon the information we have been supplied, it appears that the Department of Health takes the $72,907.00 appropriation for the director's salary, and pursuant to A.C.A. § 19-4-526, has it transferred to a budget classification for professional services contracts, and then pays the salary, plus and additional $14,717.00 from unidentified sources, to UAMS, which uses it to help pay Dr. Elders' UAMS salary. Thus, this sum is paid by the Department of Health to UAMS, and then paid by UAMS to Dr. Elders as a part of the total compensation she receives from UAMS.
You have posed four questions with regard to the above facts, but indicate that your request is not limited to these facts, and that the answers should include situations which may be applicable to any or all state agencies, boards, commissions, and institutions of higher learning. Your questions will be restated and answered below in the order in which they were posed.
Your first question is as follows:
 May a state officer or employee be employed by and/or receive compensation in the form of salaries, professional service contracts, or other compensation from two or more state agencies and/or institutions of higher learning?
The answer to this question is a qualified "yes". It is possible that a state officer or employee can legally be employed and receive compensation from more than one state agency. Some restrictions, however, apply. A discussion of the relevant law on the topic must begin with Arkansas Constitution Art. 16, § 4 which provides as follows:
 The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law.
This constitutional section is extrapolated in the "Regular Salary Procedures and Restrictions Act" codified at A.C.A. § 19-4-1601 et seq. In this regard, A.C.A. § 19-4-1601
(b)(3)(C) provides that:
 No employee authorized by the General Assembly shall receive from appropriated or cash funds, either from state, federal, or other sources, compensation in an amount greater than that established by the General Assembly as the maximum annual salary for the employee unless specific provisions are made therefore by law.
Additionally, A.C.A. § 19-4-1604 provides as follows:
 No person drawing a salary or other compensation from one (1) state agency shall be paid salary or compensation, other than actual expenses, from any other agency except upon written certification to and approval by the Chief Fiscal Officer of the State and by the head of each agency, stating that:
 (1) The work to be performed for the other agency does not interfere with the proper and required performance of the person's duties; and
 (2) The combined salary payments from the agencies do not exceed the larger maximum annual salary of the line-item position authorized for either agency from which the employee is being paid.
A separate similar requirement for employees of institutions of higher education is found at A.C.A. § 6-63-307.
The provision above allows state officers and employees to receive compensation from more than one agency, provided permission is granted by each agency head and the Chief Fiscal Officer certifying that the two requirements of the statute have been met. In Dr. Elders' situation, it may be argued that she is not receiving compensation from more than one agency, in that she is paid entirely by UAMS, which is reimbursed for her services with the Health Department. Her salary, in any event, does not exceed her line item maximum for the UAMS job, when special allowances are included.[1]
Of course, it may also be argued that in effect, she is
receiving compensation from more than one agency; she is just receiving it by an indirect route. Even if Dr. Elders' line item maximum is not exceeded, the statute, if applicable, also requires the Chief Fiscal Officer and each agency head to certify that the performance of her work for the Department of Health will not interfere with her duties as a faculty member at UAMS. This is a factual question, which would, it seems require consideration of the fact that the contract between UAMS and the Department of Health requires 260 days of actual work at the Health Department.
Two other matters relative to your question merit discussion. We have concluded thus far that it is legally possible for a state officer or employee to be employed and receive compensation from more than one state agency as long as certain conditions are met. Your first question, in part, however, inquires as to whether a state officer or employee can be employed or receive compensation by virtue of a professional services contract. Although this issue will be discussed at length in response to your third question, it should be noted from the outset that the answer to this inquiry is generally "no". Section 19-4-1707(d) provides unequivocally that:
 In no event shall any state agency engage in a professional services or consultant services contract with a part-time or full-time employee who occupies a position authorized to be paid from extra help or regular salaries for a state agency.
Thus, to the extent a professional services contract is entered into between a state agency and a state employee who is paid from extra help or regular salaries, it is illegal. The issue presented by the facts you have outlined about Dr. Elders' situation, however, is whether two state agencies
may contract with each other to provide the professional services of a state employee and thereby make an arrangement for the payment of compensation from one agency to another, and then to the employee. This issue will be discussedinfra in response to Question 3.
One final caveat should be mentioned before we proceed to your second question. Thus far, we have discussed only the salary restrictions attendant to your first question. We should also note that in some instances, constitutional, statutory, or common law impediments regarding conflicts of interest or dual office holding may prohibit certain state officers or employees from serving in other state positions. See generally on this topic Opinion No. 89-160, a copy of which is enclosed.
Your second question is as follows:
 If the answer to #1 is "yes", what procedures are required to initiate such an arrangement and what restrictions are applicable?
The procedures and restrictions applicable in this instance were outlined in response to Question 1, above. Approval must be obtained by the Chief Fiscal Officer and each agency head certifying that the line item maximum for the higher paying position will not be exceeded and that the work performed will not interfere with the person's duties. Professional services contracts may not be entered into between state agencies and state employees, and the various conflicts of interest and statutory prohibitions attendant to dual office holding must be considered.
Your third question is as follows:
 If the answer to #1 is "yes", may agency "A" receiving services performed by agency "B"'s officer or employee, negotiate a professional services contract with agency "B" for reimbursement of the services received?
The answer to this question is not clearly defined under Arkansas law. The answer may depend upon the distinct factual circumstances of each transaction. There are several provisions of law to consider. The first of these provisions, A.C.A. § 19-4-1604, has already been discussed. The introduction of a professional services contract into the equation, however, renders applicable A.C.A. § 19-4-1701et seq. That subchapter is entitled "Professional and Consultant Services" and is a part of the "General Accounting and Budgetary Procedures Law". See A.C.A. § 19-4-101 et seq. The subchapter authorizes state agencies to enter into professional and consultant services contracts whereby the services of an individual are procured and the individual serves the state as an independent contractor, and the state agency does not have direct managerial control over the day-to-day activities of the contractor. Certain contracts of the Arkansas State Highway and Transportation Department are excepted from the subchapter as are certain contracts of institutions of higher education, neither of which exception is applicable here.
Where a professional services contract is involved, all of the requirements of A.C.A. § 19-4-1701 et seq. must be met. Several provisions of this subchapter must be considered in response to your third question. Firstly, the subchapter contemplates professional services contracts between state agencies and "contractors". "Contractor" is defined at A.C.A. § 19-4-1701(2) as follows:
 "Contractor" means any person or organization which executes a contract with a state agency under which the person or organization agrees to provide professional services or consultant services to the agency and the individuals performing the services are not state employees occupying regular full-time or part-time or extra help positions provided by law. [Emphasis added.]
It may thus be argued that if state employees are to perform the work under a professional services contract, then the contracting entity is not a "contractor" and what is involved could not be a "professional services contract" at all.
Secondly, A.C.A. § 19-4-1702(b) provides that:
 Any contract under which the agency retains day-to-day managerial control over the person performing the services or in which the relationship between the contractor and the agency is that of employer and employee is not a professional services contract is illegal and expressly prohibited.
The issue presented by the provision, whether the agency retains day-to-day managerial control over the "contractor", is a factual one, but if established, renders the contract illegal.
Thirdly, and particularly troublesome is A.C.A. § 19-4-1707 (a), which provides:
 In no case should any contract contemplated by this subchapter be utilized to avoid the purpose or the spirit of the Regular Salary Procedures and Restrictions Act, § 19-4-1601.
Fourthly, as previously noted, A.C.A. § 19-4-1707(d) provides that in no event shall a state agency engage in a professional services contract with a part-time or full-time state employee. Although the contract in issue in Dr. Elders case is not a contract between the Department of Health and a state employee, (it is rather a contract between two state agencies), if the effect of that contract is to do indirectly what A.C.A. § 19-4-1707(d) prohibits one from doing directly, it is my opinion that it may stand as an impediment to the legality of the contract.
Finally, A.C.A. § 19-4-1709(b)(8)(A), sets out one of the items which must be included in the standard professional services contract forms. It provides that:
 A certification shall be included, signed by the contractor, as follows: "I ____ (name) ____ (title) _________ certify under penalty of perjury that, to the best of my knowledge and belief, no regular full-time or part-time employee of any state agency of the State of Arkansas will receive any personal, direct, or indirect monetary benefits which would be in violation of the law as a result of the execution of this contract."
Based upon all of the foregoing, it is my opinion that the question of whether a state agency may enter into a professional services contract with another state agency for reimbursement of the services provided by one agency's employee to the other, will depend upon a number of factors. If the contract is used to avoid the prohibitions in the "Regular Salary Procedures and Restrictions Act", or if the contract is one which in effect is with a particular individual who ordinarily would be prohibited from engaging in a professional services contract under § 19-4-1707(d), or if the agency retains day-to-day managerial control over the contractor, then it is my opinion that the contract would be challengeable as an attempt to do indirectly what may not be done directly. This issue, of course, raises factual questions which must be addressed on a case-by-case basis.
With regard to the contract between the Health Department and UAMS, it is my opinion that although there may be some factual issues to be resolved which are beyond the province of this office, the general structure of the contract offers the most likely basis for a successful challenge. It may be successfully contended that this contract is one which could be fulfilled by Dr. Elders alone. She alone was appointed by the Governor and approved by the Board of Health. If her services were required through a professional services contract, they, practically speaking, should have been obtained by contracting directly with her; this would, however, violate A.C.A. § 19-4-1707(d). As the situation stands, the contract indirectly violates A.C.A § 19-4-1707(d), due to its circuitous nature. It may reasonably be concluded, therefore, that this arrangement may be challenged as an indirect accomplishment of what cannot be done directly under § 19-4-1707(d).
A potential challenge may also arise under the Salary Restriction Act, specifically A.C.A. § 19-4-1601(b)(3)(C). and Arkansas Constitution Art. 16, § 4, depending upon the work performed by Dr. Elders in each position. If an employee's salary exceeds the line item maximum for the job that the employee is actually performing, at least the spirit of these provisions may be violated. This will, necessarily, involve a review of the particular facts in each instance.
The question of whether other transactions involving the contracting between two state agencies for services of each other's employees violates Arkansas law will have to be resolved on a case-by-case basis with all of the individual facts and circumstances considered. It is in my opinion, clear, however, that professional services contracts negotiated for the purpose of avoiding applicable salary restrictions or other laws will be struck down by the courts. The invalidity of such contracts will be particularly apparent where, as here, the "contractor" agency, (here UAMS) arguably serves as a conduit to funnel extra compensation to a state employee who would otherwise be prohibited from receiving it.
Your fourth question is as follows:
 If the answer to #1 is "yes", would the fact that all or substantially all of an individual's time is spent performing the duties of a position with the lessor line item salary appropriation effect [sic] the amount of compensation the individual may receive?
The fact that most or all of the individual's time is spent at the lesser authorized position does not exactly affect the amount of money the individual may receive, but is simply further evidence of an attempted avoidance of applicable salary laws. It is my opinion additionally that if a state employee spends all of his time at the lower paying position, and spends absolutely no time at the higher paid position, and yet receives the higher salary figure, a successful legal challenge may result. See generally Ark. Const. Art. 16, § 13. An issue may also arise as to whether a diversion of appropriated funds under Arkansas Constitution Art. 16, § 12 has occurred. Absent a professional services contract, with its attendant statutory requirements, a state employee may serve more than one state agency so long as the requirements of A.C.A. § 19-4-1604 are met, and the compensation received by each agency is commensurate with the work performed by the state employee for each agency.
Sincerely,
STEVE CLARK Attorney General
SC:arb
[1] We assume that these "special allowances" can be included in the line item maximum UAMS salary under § 19-4-1604, as they are authorized by the legislature.